JONAH K. KALANIANAOLE *v.* W. W. DIMOND & COMPANY LIMITED, and ARTHUR M. BROWN, HIGH SHERIFF.

ORIGINAL.

SUBMITTED FEBRUARY 8, 1904.    DECIDED MARCH 16, 1904.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A notification to the defendant in a District Court summons that "upon default to attend at the time and place above mentioned judgment will be rendered against him *ex parte* by default," which is the form set forth in C.L., §1210, is sufficient, although Sec. 1209 prescribes in general terms that the summons "shall contain a notification to the defendant that if he fails to attend at the time and place of trial designated in the writ, judgment will be rendered upon default according to the evidence taken *ex parte*."

A police officer is a constable within the meaning of our statutes and may serve process directed by a District Court to a constable.

When summons, returnable at 1:30 p. m. of a certain day, is not served until that day, and the District Court grants a continuance, it will be presumed that the service was made before the order of continuance.

A District Court summons may be served under our statutes and practice by showing the defendant the original and leaving a copy with him. It is unnecessary to read the original to him.

An *alias* execution issued after the dismissal of an appeal may be good even though the original may have been bad because issued pending an appeal from a District Court.

(Galbraith, J., dissenting.)

This is an application for a writ of prohibition to prevent the respondents from proceeding with an execution issued by the District Magistrate of Honolulu to enforce a judgment for $282 obtained by the respondent W. W. Dimond & Co., Ltd., against the petitioner herein in an action of assumpsit for the value of goods sold and delivered. Several contentions are made, which will be considered in order.

First, that the summons which was issued and served was not in the form required by the statute. The statute (C.L., Sec. 1209) provides, among other things, that the summons in a civil action in a District Court "shall contain a notification to the defendant that if he fails to attend at the time and place of trial designated in the writ, judgment will be rendered upon default according to the evidence taken *ex parte."* The summons in this case (which is in the usual printed form) directs the officer, among other things, to "notify the said Prince Kuhio Kalanianaole that upon default to attend at the time and place above mentioned, judgment will be rendered against him *ex parte* by default." The next section of the statute, however, which sets forth the form of the summons in a case in which an attachment is issued, but which prescribes the entire form in civil actions, contains the identical words found in the form used in the present case. This shows that the Legislature regarded and intended the form prescribed and used as a compliance with the form described in general terms.

Secondly, that the summons was not served by any officer to whom it was directed. It was directed "to the High Sheriff of the Territory of Hawaii, his Deputy; the Sheriff of the Island of Oahu, his Deputy; or any Constable in the District of Honolulu, Island of Oahu, Territory of Hawaii." The return is signed "George Waipa, Police Officer". The question is whether a police officer is a constable within the meaning of our statutes. Of course, in a general sense, the high sheriff, sheriffs and their

deputies are all police officers, and if "police officers" in this instance could or should be taken to mean any of them, there could be no further question on this point. But we will assume that "police officer" is used here in its specific sense as meaning what is often spoken of as a policeman. In this sense, "police officer" is, under our statutes, synonymous with "constable". Whether there was any distinction between these terms under former statutes, now repealed, we need not say. There is nothing in the general meaning of those titles to prevent their use interchangeably, and our present statutes use them throughout, and they occur in many places in the statutes, as if there were no distinction. In some places they are both used in the same section in such a way as to clearly show that they were regarded as having the same meaning, as, for instance, in C. L. Sec. 1032, which provides for their appointment.

Thirdly, that the summons was not served by an officer qualified by law to serve it; in other words, that a constable cannot serve an ordinary civil summons issued by a District Magistrate. We will assume that this cannot be done without statutory authority. It is immaterial what special statutory provisions there are in certain other jurisdictions, though we believe that in most jurisdictions constables are authorized to serve the process of courts that correspond to our District Courts. There is ample authority for this in our statutes, and this is reinforced by the long-continued practice and the reenactment of old provisions on this subject with the knowledge of such practice, as, for instance, in the Judiciary Act of 1892. In that Act we find forms set forth for civil summons, warrants of arrest, and commitments issued by District Magistrates—all copied from earlier statutes and all directed, "To any Constable of the District of . . . . . . . . . . . . . . . , Island of . . . . . . . . . . . . . . . , H. I.", or other equivalent words. C. L., Sec. 1210; P. L. Secs. 606, 610. The statute provides that such forms are sufficient, and yet if a constable, to whom alone the process might be directed, could not serve it, how could it be sufficient? Other provisions are in harmony with these. For instance, C. L., Sec. 1219, pro-

vides for the form of the return of the process "of any court * * * not of record * * * by any officer * * * of the police force." C. L., Sec. 1036, provides for service by some ·disinterested person "in all cases in which the * * * con-:stable shall be a party," etc.

Fourthly, that the summons is not shown to have been served before the court assumed to act under it by ordering a continuance. The summons was issued September 5, 1903, but not served until the return day, September 9, 1903. The writ was returnable at 1:30 p. m. of that day. There is no statute here requiring service before the return day. It has been held elsewhere that even when there is such a statute, a failure to make service until the return day is not a fatal defect. *Meisse v. Mc-Coy's Adm'r.,* 17 Oh. St. 225. The question here is merely whether it should be assumed that the service was made before the order of continuance. It is a general rule that the law does not take account of fractions of a day, but it is equally true that fractions of a day are noticed when justice requires it, and that where several judicial acts are performed on the same day, they will be presumed to have been performed in the natural or proper or legal order, in the absence of any showing to the contrary. The service in this instance must therefore be presumed to have preceded the order of continuance.

Fifthly, that the summons was served in an improper manner in that it was by leaving a copy with the defendant and showing him the original instead of leaving a copy and reading the original. The statute does not definitely prescribe the manner of service in ordinary cases in District Court cases. It prescribes for summary proceedings by landlords in District Courts the method pursued in this case. C. L., Sec. 1681. It prescribes the present method also for civil actions in courts of record (C. L., Sec. 1218), and apparently contemplates a similar return in cases in both courts of record and courts not of record. C. L., Sec. 1219. The method pursued in this case is the one that has been long pursued in District Court cases. In our opinion it is sufficient.

Sixthly, that execution was issued pending an appeal to the Circuit Court, thereby practically depriving the defendant of his constitutional right of trial by jury. See *Wong Chow v. Dickey,* 14 Haw. 524. It seems that the plaintiff below, at the request of one Moses Keohokalole, who assumed to act for the defendant, on the return day procured a continuance until the 17th of the same month; that the defendant did not appear on the 17th until after judgment by default had been rendered against him; that he then noted an appeal to the Circuit Court; that on the following day, but three days before the appeal was perfected, the plaintiff took out an execution; that the appeal was dismissed in the Circuit Court on the ground that no appeal lies from a default judgment (see *Luce v. Chin Wa,* 5 Haw. 629); that afterwards the execution was returned unsatisfied; that then, after the dismissal of the appeal, an *alias* execution was issued, which was the one under which the respondents herein were acting when this writ of prohibition was applied for. This was apparently the principal ground for this application, but now that it appears that the execution under which the respondents were acting is the one issued after the dismissal of the appeal and not the one issued pending the appeal, which is the one referred to in the petition and which the petitioner's attorney says in his brief is the one he supposed the respondents were then acting under, there is not much to be said except that, in our opinion, the contention now made that an *alias* execution cannot stand unless the original could stand, is not well founded.

Whether a judgment by default is appealable, whether execution may issue under the present statute under any circumstances pending an appeal from a District Court, or whether any of the alleged defects, if they were defects, would be fatal or could be taken advantage of on prohibition, or were waived by the failure to set them up in the lower court or by the defendant's appealing or taking other action in the lower court, it is, unnecessary to say.

The application is denied and the temporary writ dissolved.

*C. W. Ashford* for petitioner.

*Thayer & Hemenway* for respondents.

## DISSENTING OPINION OF GALBRAITH, J.

The general rule is that process must be served by the officer to whom it is directed, if served by an officer, and if served by a private person, where such service is permitted by statute, the authority for so doing must be endorsed on the process. 19 Ency. P. & P. 577, 578; *Penrose v. McKinzie,* 116 Ind. 35; *Pelham v. Edwards,* 26 Pac. 41; *Johnson v. Delbridge,* 35 Mich. 436 *Leavit v. Leavit,* 135 Mass. 193; *Gadsby v. Stiner,* 79 Mich. 260.

The service of summons in the case wherein the judgment complained of was rendered was made by a "police officer" although it was directed to "The High Sheriff of the Territory of Hawaii, his Deputy; the Sheriff of the Island of Oahu, his Deputy; or any constable in the District of Honolulu, Island of Oahu, Territory of Hawaii."

It is found by the majority of the Court that a "police officer" is a constable within the meaning of the statute and that the service made was good.

I respectfully submit that each of these findings is erroneous. If a constable is a police officer he is not the only police officer. The High Sheriff, his Deputy and the Sheriffs of the various islands of the Territory and their Deputies are each "police officers" and members of the "police force" but no one of them can properly be called a constable. Even if it were admitted that a police officer and a constable are one and the same it does not follow that such officer under either name can serve a summons in a civil case. I have been unable to find a statute expressly authorizing a police officer or constable, as such, to make service of summons.

It is provided in the Civil Code of 1859, Sec. 257, that: "there shall be appointed by the King, upon the nomination of the Minister of the Interior, some person of good moral character and discretion, to be Chief of Police, who shall be styled the Marshal of the Kingdom." That among other duties the Marshal shall "execute all lawful precepts, and mandates di-

rected to him by the King, or by any Judge, court, minister or governor." Sec. 261: That "said Marshal shall have power with the approval of the respective governors, to appoint a Deputy in each gubernatorial division of the Kingdom, who shall be styled the Sheriff of such division; and said Marshal and his Deputies may command all necessary assistance, civil or military, in the execution of their duties." Sec. 261.

The condition of the sheriff's bond is set out in Sec. 262, his tenure of office in Sec. 263, and in Sec. 264 he is authorized to appoint deputies on the approval of the Marshal.

Sec. 266 provides for the appointment of constables as follows: "The governors of the Kingdom shall appoint a certain number of constables for each district in the islands under their respective jurisdictions, who shall be under the control of the Marshal and his Deputies; but they may be removed at any time by the Governors, Marshal, any Judge of a court of record, or police justice." The succeeding section regulates the number of constables that may be appointed and prescribes that there shall not be more than one hundred for the Island of Oahu, and the same for Maui and its dependencies, and the same for Hawaii and fifty for Kauai and Niihau: "Provided, always, that nothing in this section contained shall be construed to prevent the respective governors from appointing any number of special constables, to serve without pay, in case of, and during any great emergency."

The only provision in the Civil Code governing the internal police that I have been able to find, relating to the duties of constables, is that in the above section prescribing that "they shall be under the control of the Marshal and his deputies." From this fact it may be inferred that constables were petty officers, without statutory duties, subject to the direction and control of the Marshal and his deputies.

Sec. 268 authorized the court to appoint some disinterested person to act as substitute in serving process in cases where the "Marshal, or any sheriff, deputy sheriff or constable, shall be a party, plaintiff or defendant." This section was reenacted

by the Act of 1888 (Sec. 14) and is brought forward as Section 1036, C. L.

Under chapter 15, Civil Code, regulating the practice in Police Court—the court under the former system that corresponded to the present District Court—the form of a writ of attachment, a warrant for arrest and a mittimus is set out and the direction is "to any constable of the District of ............, Island of ............, H. I." (Secs. 897, 901, 904) and the constable was given authority to "return" such process, an attachment writ, in one instance (Sec. 898). This last section and the other sections last above enumerated were repealed by the act to reorganize the Judiciary, Chapter 57, Laws of 1892, Sec. 79, although the form of a writ of attachment (Sec. 15), a warrant of arrest (Sec. 18) and a mittimus (Sec. 22) to be issued by District Magistrates, directed as in the Civil Code "To any constable", were set out in this last Act. This, however, I contend, was not sufficient to confer power on a constable, even if such officer exists under the present law, to serve the enumerated process or a summons, in the absence of a statute expressly conferring such power. It may be that the setting out of these forms should be taken as an indication of an intention or willingness on the part of the legislature that constables should have the power to serve such process but the existence of an intention in the legislative mind that constables should have this power is something entirely different from an affirmative act giving it to them. The fact should not be overlooked in this connection that in setting out the forms the language of the statute, in each instance, is, "may be in the following form" (Chapt. 57, Secs. 15, 18 and 22, Laws 1892), not "must" or "shall be", and is merely directory at most. The direction to the constable may have been an inadvertence or oversight or failure to note that the law authorizing the appointment of constables had been repealed.

At any rate neither in the Civil Code of 1859, or in the Judiciary Act of 1892, or in any other statute to which my atten-.

tion has been called, is the form of summons set out or a con-
stable specifically directed or authorized to serve the same.

By Act 8, Laws of 1888, the provisions of the Civil Code,
regulating "Internal Police" was enacted. This act provides
for a Marshal "who shall be chief of police of the Kingdom".
This act also provides for the appointment of two deputies by
the Marshal (Sec. 7), and the appointment of sheriffs for the
various islands (Sec. 5) and Sec. 9 provides among other duties
that the Marshal, and the several sheriffs, shall "execute all
lawful process and mandates directed to them by any Judge,
Court, Minister or other person thereunto authorized." (This
section is published as Sec. 1031 C. L.).

Section 10 of said Act 8, reads in part: "The Marshal for
and within the Island of Oahu, subject to the approval of the
Attorney General and the several sheriffs for and within their
respective jurisdictions, subject to the approval of the Marshal,
may appoint such deputy sheriff and other police officers as oc-
casion may require, and may dismiss them in their discretion;
and may in like manner apportion the duties, and adjust the
compensation of such officers, except as otherwise provided by
law; Provided that the number of the Police officers or con-
stables shall not exceed for the Island of Oahu, one hundred;
*   *   *   *   *   *  ;  and further provided, that nothing in this
section contained shall be construed to prevent the appointment
of any number of special constables to serve without pay"  *   *
*.  (This section is brought forward as Section 1032 C. L.).

Section 1102 of the Civil Code (Section 1218, C. L.) was
amended by Act 5, Laws of 1898, so as to direct the Marshal,
or his deputy, or a sheriff or his deputy, to serve every summons
issued under the seal of a court of record.

Section 79, of the Organic Act, changes the name of Marshal
to that of High Sheriff and prescribes that he "shall have the
powers and duties of the Marshal and deputies of the Republic
of Hawaii under the laws of Hawaii, except as changed by this
Act, and subject to modification by the legislature."

There is no specific direction in the statute prescribing the

manner of service of summons issued by a court not of record, such as the District Court, or to whom the same should be addressed.

The fact that there is no specific authority given by the statute to a constable or police officer to serve a summons in a civil case does not justify the search for such authority by implication, intendment or construction, since the High Sheriff and deputies have the undoubted authority to make such service. Nor can it be successfully maintained that the Marshal (High Sheriff) or his deputies (the sheriffs and their deputies) can give the subordinate officers such authority by verbal or even written direction, under the provisions of the statute empowering the former to "apportion the duties, and adjust the compensation of such officers", or that "they shall be under the control" of the Marshal and the sheriffs, or that "long-continued practice" can confer such authority.

It is suggested that Section 1219 C. L. gives such authority. This section reads in part, "In all cases where process of any court of record or not of record or any complaint, order or citation be served by any officer of the court or of the police force, including the Marshal, his deputy, or any sheriff or his deputies, a record thereof shall be endorsed upon the back of such process, complaint, order or citation. Such record shall state * * *. Such record shall be *prima facie* evidence of all it contains and no further proof shall be required * * *"". I find no reason to believe that the phrase "any officer of the police force" used in this section is any broader than the specific enumeration of police officers that follow it. The Marshal, or High Sheriff, is Chief of Police and an officer of the police force. The other officers enumerated in the section are also officers of the police force.

This statute was not intended to confer authority on any officer to make service but was intended to provide proof of service when made by some officer having authority to do so. This clearly appears from an examination of the session laws. The Act contains one section and is entitled "An Act to facilitate the

proof of service of process in civil cases." Act 57, Laws 1888.

The fact that the summons was directed to a constable would not authorize him to serve it unless the statute gave him the power to do so.

In an action for divorce the summons was directed "to the sheriff, his deputy, or any constable of Boston" and was served by a constable of Boston. The court dismissed the libel on the ground that a constable had no authority to serve the summons. *Brown v. Brown,* 15 Mass. 389.

In a real action the summons was served by a constable and judgment rendered by default. The Supreme Court held the judgment void; that while the statute authorized a constable to serve summons in any personal action, this being a real and not a personal action, he had no authority to make the service; that the defendant had no legal notice of the suit and was not guilty of laches in neglecting to appear and defend. *Hart v. Huckins,* 6 Mass. 400.

Again the Supreme Court of Massachusetts said, "Constables are local officers of the peace elected by cities or towns. Originally their duties were to keep the peace, and they have no authority to serve process in civil actions, except such as is expressly conferred upon them by statute." *Leavit v. Leavit,* 135 Mass. 193.

A party was arrested by a City Marshal on a warrant directed "to any Constable" and entered into a recognizance and was defaulted. The Supreme Court said that the arrest was illegal and the bond given for his appearance void. *Hickey v. Forristal,* 49 Ill. 256. For other cases to the same effect see *Kyle v. Kyle,* 55 Ind. 387; *Kennedy v. The People,* 15 Ill. 418; *Gable v. City of Elizabeth,* 41 N. J. L. 316, 317; *Penrose v. McKinzie,* 116 Ind. 35; *Upper Appomatox Co. v. Buffaloe,* 121 N. C. 37; *Pelham v. Edwards* (Kan.) 26 Pac. 41; *Johnson v. Delbridge,* 35 Mich. 436; *Gadsby v. Stiner,* 79 Mich. 260.

I am convinced that the officer making the return of the summons, whether he made it as a police officer, as he signed himself, or as a constable, had no authority in either capacity, to make the

service and return. Therefore the court had not acquired jurisdiction of the person of the defendant at the time the default was entered and the judgment rendered was absolutely void.

There is a suggestion that any defect there might be in the service was cured by the subsequent appearance of the defendant in noting and prosecuting an appeal to the Circuit Court. This position is not tenable. If the judgment was void when rendered no subsequent appearance of the defendant made for the purpose of having it set aside could revitalize it. The District Court is a statutory court and must find authority for its process and judgments in the statute.

The judgment being void, the writ should be made perpetual.